UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| ADVANCED MEDIA NETWORKS, LLC, | |
| Plaintiff, | |
| v. | Case No. _____ |
| HARRIS CAPROCK COMMUNICATIONS, INC., HARRIS CORPORATION, TRANSOCEAN INC., ROYAL CARIBBEAN LTD., and CARNIVAL CORPORATION | **JURY TRIAL DEMANDED** |
| Defendants, | |

## COMPLAINT

Plaintiff Advanced Media Networks, LLC, formerly NeTune Communications, Inc., ("AMN") brings this action against defendants Harris CapRock Communications, Inc. ("CapRock"), Harris Corporation ("Harris"), Transocean Inc. ("Transocean"), Royal Caribbean Ltd. ("Royal Caribbean"), and Carnival Corporation ("Carnival") (collectively, "Defendants") and hereby alleges as follows:

## THE PARTIES

1.     AMN is a limited liability company organized and existing under the laws of California having a principal place of business at 5900 Wilshire Boulevard, Suite 2600, Los Angeles, California 90036. AMN is a supplier of communication products and services, including portable and wireless videoconferencing and mobile wireless broadband network systems for use at remote locations.

2.     AMN was formed in the mid-1990s by inventor Curtis Clark and others to develop wireless mobile systems that enable the streaming of video and other data from remote locations.

One of these mobile systems is the "ShowRunner" system which provides access to secure broadband satellite and microwave networks and services at remote locations. Among other things, the ShowRunner system allows for the use of high-bandwidth, web-based applications (e.g., videoconferencing) in locations where traditional broadband service is unavailable. AMN's development efforts are reflected in the eleven (11) US and European patents, including the Patents-in-Suit, that it owns and practices today.

3.     Using its ShowRunner system and service, AMN has worked with Hollywood studios to provide mobile WiFi networks on location for productions such as Blackhawk Down, Spider-man, the Harry Potter series of motion pictures, and other motion picture and television productions. AMN continues to offer these services to the motion picture and other industries. Additionally, AMN has licensed the Patents-in-Suit to multiple mobile wireless network equipment and service providers, including one for which AMN is currently a global certified reseller of such equipment and services.

4.     CapRock is a corporation organized and existing under the laws of Texas having a principal place of business at 1025 West NASA Blvd., Melbourne, FL USA 32919. Upon information and belief, CapRock does business in the State of Florida and this District, contracts to supply goods or services within the State of Florida and this District, has continuous and systematic business contacts within the State of Florida and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of Florida and this District and commits and has committed acts of patent infringement either within the State of Florida and this District, or outside the State of Florida and this District with a reasonable expectation that such acts would have consequences within the State of Florida and this District.

5.      Harris is a corporation organized and existing under the laws of Delaware having a principal place of business at 1025 West NASA Boulevard, Melbourne, Florida 32919. Upon information and belief, Harris does business in the State of Florida and this District, contracts to supply goods or services within the State of Florida and this District, has continuous and systematic business contacts within the State of Florida and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of Florida and this District and commits and has committed acts of patent infringement either within the State of Florida and this District, or outside the State of Florida and this District with a reasonable expectation that such acts would have consequences within the State of Florida and this District.

6.      Transocean is a Cayman Islands corporation having a principal place of business at 4 Greenway Plaza, Houston, TX 77046. Upon information and belief, Transocean operates extensively in the Gulf of Mexico and maintains offices in Florida, including a presence in Pensacola. Upon information and belief, Transocean does business in the State of Florida and this District, contracts to supply goods or services within the State of Florida and this District, has continuous and systematic business contacts within the State of Florida and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of Florida and this District and commits and has committed acts of patent infringement either within the State of Florida and this District, or outside the State of Florida and this District with a reasonable expectation that such acts would have consequences within the State of Florida and this District.

7.      Royal Caribbean is a corporation organized and existing under the laws of Delaware having a principal place of business at 1050 Caribbean Way, Miami, Florida 33132 and

operating out of U.S. ports including Port Canaveral, Florida and Tampa, Florida. Upon information and belief, Royal Caribbean does business in the State of Florida and this District, contracts to supply goods or services within the State of Florida and this District, has continuous and systematic business contacts within the State of Florida and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of Florida and this District and commits and has committed acts of patent infringement either within the State of Florida and this District, or outside the State of Florida and this District with a reasonable expectation that such acts would have consequences within the State of Florida and this District.

8.      Carnival is a corporation organized and existing under the laws of Panama having a principal place of business at 3655 N.W. 87th Avenue, Miami, Florida 33178 and operating out of U.S. ports including Port Canaveral, Florida and Tampa, Florida. Upon information and belief, Carnival does business in the State of Florida and this District, contracts to supply goods or services within the State of Florida and this District, has continuous and systematic business contacts within the State of Florida and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of Florida and this District and commits and has committed acts of patent infringement either within the State of Florida and this District, or outside the State of Florida and this District with a reasonable expectation that such acts would have consequences within the State of Florida and this District.

## JURISDICTION AND VENUE

9.      This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq.* This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c),

1400(b), and 1404(a).

## FACTS COMMON TO ALL COUNTS

*The Patents-In-Suit*

11.     On September 28, 1999, U.S. Patent No. 5,960,074 (the "'074 Patent"), entitled "Mobile Tele-Computer Network For Motion Picture, Television and Advertising Production," a copy of which is attached hereto as Exhibit A, was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Curtis Clark as inventor.

12.     On September 3, 2002, U.S. Patent No. 6,445,777 (the "'777 Patent"), entitled "Mobile Tele-Computer Network," a copy of which is attached hereto as Exhibit B, was duly and legally issued by the USPTO to Curtis Clark, *et al.* as inventors.

13.     On October 15, 2002, U.S. Patent No. 6,466,179 (the "'179 Patent," the '074, '179 and '777 Patents being referred to collectively herein as the "Patents-in-Suit"), entitled "Alignment Jig Assembly," a copy of which is attached hereto as Exhibit C, was duly and legally issued by the USPTO to Robert G. Ehrenberg, *et al.* as inventors.

14.     AMN is the owner by assignment of the Patents-in-Suit.

15.     In addition to being examined by the USPTO before being issued, the '074 Patent and '777 Patent have each been reexamined by the USPTO multiple times.  During these reexaminations, initiated at the request of several different parties, the USPTO considered dozens of prior art references it had not previously considered and confirmed the validity of the original claims (some as amended) as well as many new claims added during the reexaminations.

16.     The '074 Patent was subject to a first reexamination before the USPTO, resulting in the USPTO issuing an Ex Parte Reexamination Certificate on November 22, 2011 confirming original claims 1 through 40 (some as amended) and adding new claims 41 through 127. A copy

of this Reexamination Certificate is attached hereto as Exhibit D. Similarly, the '777 Patent was subject to a first reexamination before the USPTO, resulting in the USPTO issuing an Ex Parte Reexamination Certificate on November 15, 2011 confirming original claims 1 through 28 (some as amended) and adding new claims 29 through 109. A copy of this Reexamination Certificate is attached hereto as Exhibit E.

17.     The '074 Patent and '777 Patent underwent a second round of ex parte reexaminations by the USPTO which again resulted in the original claims being confirmed and new claims being added. For the '074 Patent, the USPTO issued an Ex Parte Reexamination Certificate on April 23, 2014 confirming claims 1 through 127 (some as amended) and adding new claims 128 through 147. A copy of this Reexamination Certificate is attached hereto as Exhibit F. For the '777 Patent, the USPTO issued an Ex Parte Reexamination Certificate on April 8, 2014 confirming original claims 1 through 109 (some as amended) and adding new claim 110. A copy of this Reexamination Certificate is attached hereto as Exhibit G.

*Licensing History of the Patents-in-Suit*

18.     The Patents-in-Suit have been licensed to several companies offering products and services providing mobile wireless Internet access, including products and services similar to and operating in the same field of use as those described herein offered by Defendants and covered by the Patents-in-Suit.

19.     On January 11, 2010, AMN commenced an action in the Southern District of New York against Inmarsat Inc., Inmarsat Global Limited, Stratos Mobile Networks, Inc. and Vizada Inc. (Case No. 1:10-cv-00194-KBF) alleging infringement of the '074 Patent and '777 Patent by, among things, the SwiftBroadband in-flight broadband wireless Internet access service and the BGAN portable satellite access terminals. On July 26, 2012, this case was dismissed with

prejudice following settlement and licensing agreements between the parties.

20.     On December 19, 2011, AMN commenced an action in the Central District of California against Gogo LLC ("Gogo") and Aircell Business Aviation Services LLC ("Aircell") (Case No. 2:11-cv-10474-GAF-JCG) alleging infringement of the '074 Patent by broadband products and services installed and operating on aircraft to provide WiFi service to passengers. On April 9, 2012, AMN filed an amended complaint adding defendants Bombardier Aerospace Corporation, Delta Air Lines, Learjet, Inc., NetJets, Inc., United Air Lines Inc., and XOJET, Inc. On August 5, 2013, this case was dismissed with prejudice following a settlement agreement between parties involved in the case.

21.     On December 28, 2012, AMN commenced an action in the Central District of California against Row 44, Inc. and Southwest Airlines Co. (Case No. 2:12-cv-11018-GAF-JCG) alleging infringement of the '074 Patent and '777 Patent by broadband products and services installed and operating on commercial aircraft to provide WiFi service to passengers. On August 5, 2014, AMN filed an amended complaint adding defendant Global Eagle Entertainment, Inc. On January 5, 2015 an order of dismissal was entered in this case following a settlement and licensing agreement between parties in the case.

22.     On June 23, 2014, AMN entered into a licensing agreement with Panasonic Avionics Corporation ("PAC"), providing PAC with a non-exclusive license to practice the Patents-in-Suit, without litigation. On information and belief, PAC is one of the largest providers of mobile wireless network services practicing in the same field of use as Defendants.

*The Defendants' Infringing Products and Services*

CapRock and Harris

23.     Defendants CapRock and Harris (collectively, "the Harris CapRock Defendants")

design and sell broadband wireless communications systems that utilize satellites and mobile WiFi hotspots ("Harris CapRock Systems") to provide wireless broadband Internet access and services to customers ("Harris CapRock Services") (collectively, "Harris CapRock Systems and Services").

24.     The Harris CapRock Defendants market the Harris CapRock Systems and Services to cruise operators (such as Carnival and Royal Caribbean), commercial shipping operators (such as Transocean), and energy/mining operators.

25.     The Harris CapRock Defendants market, sell, and offer to sell the Harris CapRock Services as the "FieldAccess" service and "SeaAccess" service.

26.     The FieldAccess service provides mobile WiFi hotspots for land-based operations such as land drilling operations and for offshore drilling operations operated by customers including, but not limited to, Transocean.

27.     The SeaAccess service provides mobile WiFi hotspots primarily for maritime vehicles, including, but not limited to, cruise ships operated by defendants Royal Caribbean and Carnival or commercial ships (e.g., drillships or mobile drill rigs) operated by Transocean.

28.     The Harris CapRock Systems include very-small-aperture terminal ("VSAT") devices and networking hardware such as modem devices, router devices, wireless router devices, and/or other communications hardware.

29.     The Harris CapRock Systems and Services allow customers to communicate with satellites orbiting the Earth via the VSAT devices and networking hardware.

30.     The Harris CapRock Systems and Services allow for high bandwidth, microwave communications with the orbiting satellites in satellite bands including, but not limited to, the Ku- and C-bands.

31.     Communications are relayed by the satellites to one of the Harris CapRock Defendants' ground stations located throughout the world.

32.     The ground stations facilitate communications and connect transmissions from satellites (and the mobile communications products) to terrestrial networks such as the public Internet, private intranets, and/or private networks owned and/or operated by the Harris CapRock Defendants.

33.     Upon information and belief, the Harris CapRock Systems and Services utilize standard protocols such as IEEE 802.11, TCP, and/or IP.

34.     Upon information and belief, communications from the Harris CapRock Systems and Services use standard protocols such as TCP and/or IP.

35.     The Harris CapRock Defendants additionally make, use, sell, or offer to sell various antennae including the SpaceTrack 4000, 4000E, and 4500 antennae ("Satellite Antennae").

36.     Upon information and belief, the Satellite Antennae are part of the Harris CapRock Systems utilized by the Harris CapRock Services (e.g., SeaAccess and FieldAccess).

<u>Transocean, Royal Caribbean and Carnival</u>

37.     Defendants Transocean, Royal Caribbean and Carnival (collectively "Maritime Defendants") use Harris CapRock Systems and Services' onboard vessels (e.g., cruise ships, drill ships, mobile oil rigs) owned and/or operated by customers including the Maritime Defendants.

38.     Upon information and belief, the Harris CapRock Systems installed on the Maritime Defendants' vessels include mobile communications equipment as discussed *supra* in paragraphs 21 through 34.

39.     Upon information and belief, the Harris CapRock Systems provide wireless broadband Internet access to the Maritime Defendants' fleet of vessels.

40.     Upon information and belief, Royal Caribbean and Carnival resell access to the SeaAccess services to users (e.g., passengers and/or crew members) on-board cruise ships equipped with SeaAccess.

41.     Upon information and belief, the Harris CapRock Defendants provide continuing support to the Maritime Defendants with respect to the Harris CapRock Services utilized by the Maritime Defendants.

*The Defendants' Knowledge of AMN and the Patents-in-Suit*

42.     In late 2001 and early 2002, AMN had discussions and meetings with CapRock executives regarding its mobile wireless technology and antennas and to explore possible business opportunities between AMN and CapRock.  These included a two day meeting in Houston, Texas with CapRock executives, including CEO Peter Shaper and President Erroll Oliver.

43.     On September 25, 2012, AMN through its counsel formally notified CapRock President Tom Eaton via letter that products and services made, used, sold, or offered for sale by the Harris CapRock Defendants infringed the '074 and '777 Patents including the Field Access and Command Access systems. In a letter dated September 28, 2012 The Harris CapRock Defendants acknowledged receipt of the September 25, 2012 letter from AMN.

44.     Upon information and belief, Defendants were already aware of the '074 and '777 Patents prior to receipt of the formal notice from AMN by virtue of, among other things, the prior litigation of such patents in its industry including against the Harris CapRock Defendants' direct competitors including Inmarsat and Vizada, and its potential customers in the maritime and VSAT industries.

45.     Since becoming aware of the Patents-in-Suit at least as early as September 25, 2012,

the Harris CapRock Defendants continued to make, use, sell and offer to sell Harris CapRock

Systems and Services, including FieldAccess and SeaAccess, to customers including

Transocean, Royal Caribbean, and Carnival, thereby willfully infringing AMN's Patents-in-Suit.

46.     Since the Harris CapRock Defendants became aware of the Patents-in-Suit,

Transocean, Royal Caribbean, and Carnival have continued to use the Satellite Antennae and the

Harris CapRock Systems and Services, thereby willfully infringing AMN's Patents-in-Suit.

## COUNT I
*Infringement of United States Patent No. 5,960,074*
*(Against All Defendants)*

47.     AMN repeats the allegations contained in the preceding paragraphs 1 through 46 as

though fully set forth herein.

48.     Upon information and belief, each Defendant has in the past infringed and continues

to infringe the '074 Patent, directly and/or by contributory infringement and/or by inducement of

infringement, by making, using, selling and/or offering to sell, in this judicial district and

elsewhere, Harris CapRock Systems and Services, including, but not limited to, FieldAccess

and/or SeaAccess, which embody the patented invention of the '074 Patent.

49.     Pursuant to 35 U.S.C. § 271(a), CapRock and Harris are each liable for direct

infringement of the '074 Patent by having made, used, offered to sell, or sold and continuing to

make, use, sell and/or offer to sell the Harris CapRock Systems and Services (e.g., SeaAccess or

FieldAccess). CapRock and Harris's infringement includes, but is not limited to, the

manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services

which embody the patented invention of the '074 Patent. CapRock and Harris have contracted to

sell and has sold both the Harris CapRock Systems and Services (in configurations generally

similar to the allegations previously made herein) to various customers including, *inter alia,*

Transocean, Carnival, and Royal Caribbean. CapRock and Harris continue to make, use, sell, offer to sell, and/or import Harris CapRock Systems and Services despite having actual knowledge of the infringement of the '074 Patent communicated by AMN as discussed *supra*.

50.     Pursuant to 35 U.S.C. § 271(b), CapRock and Harris are each liable for inducement of infringement by having, and continuing to, knowingly cause (or intend to cause) the direct infringement of the '074 Patent by users of the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess) including, but not limited to, AHW, Transocean, Carnival, and Royal Caribbean.

51.     Pursuant to 35 U.S.C. § 271(c), CapRock and Harris are liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess), and the components thereof, which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent, and which is not suitable for any substantial non-infringing use, in order to provide the Harris CapRock Services to users and having knowledge that the '074 Patent was/is being directly infringed by users.'

52.     Pursuant to 35 U.S.C. § 271(f), CapRock and Harris are liable for infringement of the '074 Patent by knowingly supplying customers outside of the United States with components of the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess), the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by CapRock and Harris to foreign entities would infringe the patent if such combination occurred within the United States.

53.     Pursuant to 35 U.S.C. § 271(a), Royal Caribbean is liable for direct infringement of

the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Harris CapRock Systems and Services (e.g., SeaAccess). Royal Caribbean's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services, which embody the patented invention of the '074 Patent. Royal Caribbean has and continues to utilize both the components of the Harris CapRock Systems and Services provided by CapRock to provide broadband access aboard Royal Caribbean's cruise ships. Additionally, Royal Caribbean has, and continues to sell, broadband access to their customers who directly infringe the '074 Patent by using Harris CapRock Systems and Services.

54.     Pursuant to 35 U.S.C. § 271(b), Royal Caribbean is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users (e.g., passengers and/or crew members) of Harris CapRock Systems and Services.

55.     Pursuant to 35 U.S.C. § 271(c), Royal Caribbean is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., passengers and/or crew members) and having knowledge that the '074 Patent was/is being directly infringed by users.

56.     Pursuant to 35 U.S.C. § 271(a), Carnival is liable for direct infringement of the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer

to sell Harris CapRock Systems and Services (e.g., SeaAccess). Carnival's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services, which embody the patented invention of the '074 Patent. Carnival has and continues to utilize both the components of the Harris CapRock Systems and Services provided by CapRock to provide broadband access aboard Carnival's cruise ships. Additionally, Carnival has, and continues to sell, broadband access to their customers who directly infringe the '074 Patent by using Harris CapRock Systems and Services.

57.     Pursuant to 35 U.S.C. § 271(b), Carnival is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users (e.g., passengers and/or crew members) of Harris CapRock Systems and Services.

58.     Pursuant to 35 U.S.C. § 271(c), Carnival is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., passengers and/or crew members) and having knowledge that the '074 Patent was/is being directly infringed by users.

59.     Pursuant to 35 U.S.C. § 271(a), Transocean is liable for direct infringement of the '074 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Harris CapRock Systems and Services (e.g., SeaAccess). Transocean's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of

Harris CapRock Systems and Services, which embody the patented invention of the '074 Patent. Transocean has and continues to utilize both the components of the Harris CapRock Systems and Services provided by CapRock to provide broadband access aboard Transocean's ships. Additionally, Transocean has, and continues to sell, broadband access to passengers and/or crew members who directly infringe the '074 Patent by using Harris CapRock Systems and Services.

60.     Pursuant to 35 U.S.C. § 271(b), Transocean is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '074 Patent by users of the Harris CapRock Systems and Services.

61.     Pursuant to 35 U.S.C. § 271(c), Transocean is liable for contributory infringement of the '074 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '074 Patent, which is especially made or adapted for use in infringing the '074 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., crew members) and having knowledge that the '074 Patent was/is being directly infringed by users.

62.     Upon information and belief, Defendants' infringement of the '074 Patent is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '074 Patent and thus acting in reckless disregard of AMN's patent rights.

63.     As a result of Defendants' acts of infringement of the '074 Patent, AMN has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

64.     Unless an injunction is issued enjoining Defendants and their officers, agents,

servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '074 Patent, AMN will be irreparably harmed.

### COUNT II
*Infringement of United States Patent No. 6,445,777*
*(Against All Defendants)*

65.     AMN repeats the allegations contained in the preceding paragraphs 1 through 64 as though fully set forth herein.

66.     Upon information and belief, each Defendant has in the past infringed and continues to infringe the '777 Patent, directly and/or by contributory infringement and/or by inducement of infringement, by making, using, selling and/or offering to sell, in this judicial district and elsewhere in the United States, Harris CapRock Systems and Services, including, but not limited to, FieldAccess and SeaAccess, which embody the patented invention of the '777 Patent.

67.     Pursuant to 35 U.S.C. § 271(a), CapRock and Harris are each liable for direct infringement of the '777 Patent by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess). CapRock and Harris's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services which embody the patented invention of the '777 Patent. CapRock and Harris have contracted to sell and has sold both the Harris CapRock Systems and Services (in configurations generally similar to the allegations previously made herein) to various customers including, inter alia, Transocean, Carnival, and Royal Caribbean. CapRock and Harris continue to make, use, sell, offer to sell, and/or import Harris CapRock Systems and Services despite having actual knowledge of the infringement of the '777 Patent communicated by AMN as discussed supra.

68.     Pursuant to 35 U.S.C. § 271(b), CapRock and Harris are each liable for inducement of

infringement by having, and continuing to, knowingly cause (or intend to cause) the direct infringement of the '777 Patent by users of the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess) including, but not limited to, AHW, Transocean, Carnival, and Royal Caribbean.

69.     Pursuant to 35 U.S.C. § 271(c), CapRock and Harris are liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess), and the components thereof, which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent, and which is not suitable for any substantial non-infringing use, in order to provide the Harris CapRock Services to users and having knowledge that the '777 Patent was/is being directly infringed by users.

70.     Pursuant to 35 U.S.C. § 271(f), CapRock and Harris are liable for infringement of the '777 Patent by knowingly supplying customers outside of the United States with components of the Harris CapRock Systems and Services (e.g., SeaAccess or FieldAccess), the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by CapRock and Harris to foreign entities would infringe the patent if such combination occurred within the United States.

71.     Pursuant to 35 U.S.C. § 271(a), Royal Caribbean is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Harris CapRock Systems and Services (e.g., SeaAccess). Royal Caribbean's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services, which embody the patented invention of the

'777 Patent. Royal Caribbean has and continues to utilize both the components of the Harris CapRock Systems and Services provided by CapRock to provide broadband access aboard Royal Caribbean's cruise ships. Additionally, Royal Caribbean has, and continues to sell, broadband access to their customers who directly infringe the '777 Patent by using Harris CapRock Systems and Services.

72.    Pursuant to 35 U.S.C. § 271(b), Royal Caribbean is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users (e.g., passengers and/or crew members) of Harris CapRock Systems and Services.

73.    Pursuant to 35 U.S.C. § 271(c), Royal Caribbean is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., passengers and/or crew members) at sea and having knowledge that the '777 Patent was/is being directly infringed by users.

74.    Pursuant to 35 U.S.C. § 271(a), Carnival is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Harris CapRock Systems and Services (e.g., SeaAccess). Carnival's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services, which embody the patented invention of the '777 Patent. Carnival has and continues to utilize both the components of the Harris CapRock Systems and

Services provided by CapRock to provide broadband access aboard Carnival's cruise ships. Additionally, Carnival has, and continues to sell, broadband access to their customers who directly infringe the '777 Patent by using Harris CapRock Systems and Services.

75.     Pursuant to 35 U.S.C. § 271(b), Carnival is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users (e.g., passengers and/or crew members) of Harris CapRock Systems and Services.

76.     Pursuant to 35 U.S.C. § 271(c), Carnival is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., passengers and/or crew members) and having knowledge that the '777 Patent was/is being directly infringed by users.

77.     Pursuant to 35 U.S.C. § 271(a), Transocean is liable for direct infringement of the '777 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Harris CapRock Systems and Services (e.g., SeaAccess). Transocean's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Harris CapRock Systems and Services, which embody the patented invention of the '777 Patent. Transocean has and continues to utilize both the components of the Harris CapRock Systems and Services provided by CapRock to provide broadband access aboard Transocean's ships. Additionally, Transocean has, and continues to sell, broadband access to passengers and/or crew

members who directly infringe the '777 Patent by using Harris CapRock Systems and Services.

78.     Pursuant to 35 U.S.C. § 271(b), Transocean is liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '777 Patent by users of the Harris CapRock Systems and Services.

79.     Pursuant to 35 U.S.C. § 271(c), Transocean is liable for contributory infringement of the '777 Patent by having sold or offered to sell and continuing to sell or offer to sell Harris CapRock Services (e.g., SeaAccess) and the components of the Harris CapRock Systems which comprise a material component of the invention embodied in the '777 Patent, which is especially made or adapted for use in infringing the '777 Patent and which is not suitable for any substantial non-infringing use, in order to provide Harris CapRock Services to users (e.g., crew members) and having knowledge that the '777 Patent was/is being directly infringed by users.

80.     Upon information and belief, Defendants' infringement of the '777 Patent is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '777 Patent and thus acting in reckless disregard of AMN's patent rights.

81.     As a result of Defendants' acts of infringement of the '777 Patent, AMN has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

82.     Unless an injunction is issued enjoining Defendants and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '777 Patent, AMN will be irreparably harmed.

## COUNT III
*Infringement of United States Patent No. 6,466,179*
*(Against All Defendants)*

83.     AMN repeats the allegations contained in the preceding paragraphs 1 through 82 as though fully set forth herein.

84.     Pursuant to 35 U.S.C. § 271(a), CapRock and Harris are liable for direct infringement of the '179 Patent by having made, used, sold or offered to sell and continuing to make, use, sell and/or offer to sell Satellite Antennae. CapRock and Harris's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Satellite Antennae which embody the patented invention of the '179 Patent. CapRock and Harris have contracted to sell and have sold Satellite Antennae to various customers in the United States and abroad. CapRock and Harris continue to make, use, sell, offer to sell, and/or import Satellite Antennae despite having actual knowledge of the infringement of the '179 Patent communicated by AMN as discussed *supra*.

85.     Pursuant to 35 U.S.C. § 271(b), CapRock and Harris are liable for inducement of infringement by having knowingly caused or intended to cause and continuing to knowingly cause or intend to cause the direct infringement of the '179 Patent by users of the Satellite Antennae.

86.     Pursuant to 35 U.S.C. § 271(c), CapRock and Harris are liable for contributory infringement of the '179 Patent by having sold or offered to sell and continuing to sell or offer to sell components of Satellite Antennae which comprise a material component of the invention embodied in the '179 Patent, which is especially made or adapted for use in infringing the '179 Patent and which is not suitable for any substantial non-infringing use and having knowledge that the '179 Patent was/is being directly infringed by users.

87.     Pursuant to 35 U.S.C. § 271, CapRock and Harris are liable for infringement of the '179 Patent by knowingly supplying customers, including, but not limited to, cruise operators and commercial shipping operations, outside of the United States with components of the Satellite Antennae, the components having no other substantial non-infringing use and not being staple articles or commodities of commerce. Further, the combination of components supplied by CapRock and Harris to foreign entities would infringe the patent if such combination occurred within the United States.

88.     Pursuant to 35 U.S.C. § 271(a), Transocean is liable for direct infringement of the '179 Patent by having used and continuing to use Satellite Antennae. Transocean has continued to use Satellite Antennae in connection with their SeaAccess service despite having knowledge of the infringement of the '179 Patent as discussed *supra*.

89.     Pursuant to 35 U.S.C. § 271(a), Royal Caribbean is liable for direct infringement of the '179 Patent by having used and continuing to use Satellite Antennae. Royal Caribbean has continued to use Satellite Antennae in connection with their SeaAccess service despite having knowledge of the infringement of the '179 Patent as discussed *supra*.

90.     Pursuant to 35 U.S.C. § 271(a), Carnival is liable for direct infringement of the '179 Patent by having used and continuing to use Satellite Antennae. Carnival has continued to use Satellite Antennae in connection with their SeaAccess service despite having knowledge of the infringement of the '179 Patent as discussed *supra*.

91.     Upon information and belief, Defendants' infringement of the '179 Patent is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '179 Patent and thus acting in reckless disregard of AMN's patent rights.

92.     As a result of Defendants' acts of infringement of the '179 Patent, AMN has suffered

injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

93.     Unless an injunction is issued enjoining Defendants and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '179 Patent, AMN will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, AMN prays for judgment and relief as follows:

A. A declaration that Defendants have infringed, are infringing, have induced and are inducing, have contributed and are contributing to the infringement of the '074, '777, and '179 Patents;

B. A permanent injunction enjoining Defendants, their officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing, inducing infringement, and contributing to the infringement of the '074, '777, and '179 Patents;

C. An award of damages adequate to compensate AMN for the infringement of the '074, '777, and '179 Patents by Defendants;

D. A declaration that Defendants' continuing infringement of the '074, '777, and '179 Patents was and is willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

E. An award of pre-judgment and post-judgment interest on the damages caused by reason of Defendants' infringement of the '074, '777, and '179 Patents;

F.  A declaration that this an exceptional case and that AMN be granted its reasonable

    attorneys' fees in accordance with 35 U.S.C. § 285;

G.  An award of costs to AMN; and

H.  A grant to AMN of such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

AMN demands trial by jury on all claims and issues so triable.

Dated: February 26, 2015                Respectfully submitted,

                                        By: *Daniel P Dietrich*
                                        William J. Schifino, Jr., Esq.
                                        Florida Bar No.: 564338
                                        wschifino@burr.com
                                        Daniel P. Dietrich, Esq.
                                        Florida Bar No.: 934461
                                        ddietrich@burr.com
                                        **BURR & FORMAN LLP**
                                        201 North Franklin Street, Suite 3200
                                        Tampa, Florida 33602
                                        Telephone: (813) 221-2626
                                        Facsimile: (813) 221-7335
                                        *Attorneys/trial counsel for Plaintiff*
                                        *Advanced Media Networks, LLC*

Of Counsel:

Seth H. Ostrow (to be admitted pro hac vice)
sho@msf-law.com
Jeffrey P. Weingart (to be admitted pro hac vice)
jpw@msf-law.com
Geroge D. Zalepa (to be admitted pro hac vice)
gdz@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Facsimile: (212) 655-3536